IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CBX TECHNOLOGIES, INC., | * | |
| Plaintiff | * | |
| v. | * | CIVIL NO. JKB-10-2112 |
| GCC TECHNOLOGIES, LLC, | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

This case arises from a cooperative arrangement between two government contractors that proved to be less than cooperative. One has now sued the other, who has moved to dismiss the complaint for lack of subject-matter jurisdiction and for failure to state a claim.

CBX Technologies is a California corporation in the business of providing consulting services to government agencies in regard to information technology, contract support, and acquisition support. (Compl. ¶¶ 2, 4, ECF No. 1.) Early in 2009, CBX's president, Mr. Chris D'Andrade, became aware of a potential business opportunity involving the U.S. Department of Education's Federal Student Aid ("FSA") program. (*Id.* ¶ 5.) Later that year, D'Andrade attended a prebid conference in Washington, D.C., and became aware that CBX would not be allowed to bid as a primary contractor because CBX was not a participant in a program for government contractors known as Mission Oriented Business Integrated Services ("MOBIS"). (*Id.*) Consequently, CBX sought another contractor who was a MOBIS participant and with whom it could team for the bid. (*Id.* ¶ 6.) The company selected by CBX for this purpose was GCC Technologies, a Maryland corporation. (*Id.* ¶¶ 3, 6.)

CBX and GCC entered into a teaming agreement under which GCC was to be considered the primary contractor and CBX would serve as the subcontractor. (*Id.* ¶ 6.) CBX alleges that the teaming agreement directed that GCC would provide 51 percent of the full-time employees for the FSA program and receive 51 percent of the contract's value, while CBX would provide 49 percent of the full-time employees assigned to the contract and receive 49 percent of the value. (*Id.*) In late September 2009, GCC was awarded the FSA contract, which had a value of $2,401,494.40. (*Id.* ¶ 7.) A few days later, CBX had five employees in place to work on the FSA contract; those employees had been interviewed by GCC president James Bailey and approved by the Department of Education. (*Id.* ¶ 8.) On June 6, 2010, CBX and GCC executed a subcontract agreement with an effective date of November 9, 2009. (*Id.* ¶ 9.) The subcontract specified that CBX's employees working under the subcontract would at all times be under CBX's direction and control. (*Id.* ¶ 9.) CBX alleges that Bailey, almost immediately after GCC and CBX started working on the contract,

> began to interfere with CBX's employees, by usurping and exercising supervisory control over these employees in a manner that these employees generally described, at best, as "micro-managing" and "dictatorial." At least one female also complained of Bailey's sexual harassment. As a direct result of Bailey's offensive conduct, all but one of CBX's original five employees assigned to work on the FSA contract left CBX by early 2010.

(*Id.* ¶ 10.) Further, CBX alleges that it repeatedly attempted to replace the employees whom Bailey had caused to leave CBX, but that Bailey authorized only three new hires and ordered CBX to fire two other employees, leaving only one CBX employee as of July 15, 2010. (*Id.* ¶ 11.)

On June 8, 2010, Bailey wrote a letter to CBX, stating that GCC considered CBX to be in default on the subcontract because of its "excessively high turnover rate" and because the performance of CBX's assigned employees was "endangering performance of the subcontract

2

and related prime contract." The letter gave CBX ten days to cure the stated deficiencies. (*Id.* ¶ 12.) Although CBX responded to the cure letter, Bailey sent a termination letter on July 15, 2010, declaring an end to the parties' agreement on different grounds from those asserted in the cure letter. (*Id.* ¶¶ 13, 14.) CBX alleges that Bailey, acting on behalf of GCC, "knowingly, willfully, and maliciously sought to prevent CBX from carrying out its work under the agreement, for the purpose of depriving CBX of its fair share of the contract as agreed by the parties." (*Id.* ¶ 16.) Finally, CBX alleges it should have received at least $1,176,000 from the FSA contract, but at the time the complaint was filed, GCC had paid only $200,000 under the contract. (*Id.* ¶ 17.) Thus, CBX asserts one count for breach of the teaming agreement allegedly incorporated into the subcontract agreement by GCC's

> failing and refusing to allow CBX to manage its own employees, by interfering with the work of CBX's employees, by driving these employees to resign, by refusing to allow CBX to hire new employees, and by terminating the agreement without just cause.

CBX demands at least $976,000 in compensatory damages. (*Id.* ¶ 21.)

## *Motion to Dismiss*

GCC has moved to dismiss CBX's complaint for lack of subject-matter jurisdiction and for failure to state a claim. Fed. R. Civ. P. 12(b)(1), (6). GCC claims that CBX has based its demand for damages on a teaming agreement that was no longer in effect for the period of time in question. (Mot. Dism. at 1, ECF No. 11.) GCC also contends that CBX's complaint fails to state a claim because of insufficient factual allegations to support a breach of the subcontract agreement; as well, GCC contends CBX has not alleged sufficient facts to show it is entitled to any damages pursuant to the subcontract agreement, assuming GCC breached it. (*Id.*)

*Subject-matter jurisdiction*

GCC argues that CBX is unable to satisfy the $75,000 minimum damages threshold for federal diversity jurisdiction. (Supp. Mem. at 5, ECF No. 12.) First, GCC asserts that CBX's damage claim is based upon a superseded agreement that was not in effect during the time about which CBX has complained. (*Id.* at 6.) Second, GCC contends the amount claimed by CBX is not recoverable under Maryland law. (*Id.* at 8.)

GCC attached to its supporting memorandum copies of the teaming agreement and the subcontract agreement. (*Id.*, Ex. A, Ex. B.) These may properly be considered by the Court in evaluating the motion to dismiss because they are integral to and explicitly relied upon by CBX in its complaint and their authenticity has not been challenged. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004). After reviewing these agreements, it is beyond clear that the teaming agreement was not incorporated into the subcontract agreement.

Article VIII of the teaming agreement provided it would automatically expire upon the "execution of a subcontract agreement between GCC and CBX pursuant to a Prime Contract by the Client to GCC for the Project." Consistent with that provision, Paragraph 34 of the subcontract agreement provided that it superseded any teaming agreement between the parties. Given the subcontract agreement's effective date of November 9, 2009, which must also be interpreted as the effective date of the expiration of the teaming agreement by operation of Paragraph 34 of the subcontract agreement, CBX's allegations about GCC's actionable conduct appear to relate to the time after the teaming agreement expired.

Even if the teaming agreement were considered to be in effect during that period of time, it expresses, in its Attachment A, only an intent that CBX would receive 49 percent under the contract that the parties hoped would be awarded in the future. Otherwise, the teaming agreement includes no mechanism for payment of anything by anyone to anyone else.

Consequently, even if the teaming agreement had been in effect and breached by GCC, CBX can point to no provision of it by which a court could calculate damages. Without a way to measure damages for a claimed breach of contract, this Court would appear to be without subject-matter jurisdiction.

GCC's second argument on subject-matter jurisdiction is based upon the apparent assumption that CBX is pleading a breach of the subcontract agreement. CBX has not so pleaded, restricting its claim to an alleged breach of the teaming agreement as it was allegedly incorporated into the subcontract agreement. Because the underlying assumption is incorrect, the Court does not address this second argument.

*Failure to state a claim*

GCC has further asserted that CBX's complaint fails to state a claim under Rule 12(b)(6). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 1950. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555.

Much of what has already been said pertaining to the inadequacy of the complaint's allegations of subject-matter jurisdiction also pertains to the question of whether CBX has failed to state a claim. CBX has premised its complaint upon a breach of the teaming agreement, which was allegedly incorporated into the subcontract agreement. This allegation is clearly

implausible in light of the actual wording of the two agreements. And even if GCC had breached the teaming agreement, that agreement has no provision to grant a measure of damages to the nonbreaching party. Further, even if the Court were to interpret CBX's complaint as one based on a breach of the subcontract agreement – contrary to the actual language of the complaint – that agreement does not obligate GCC to pay CBX 49 percent of the primary contract. It only obligates GCC to pay CBX set amounts per labor hour worked. CBX would have to allege that it was not compensated for hours worked in order to state a plausible claim for damages under this scenario. CBX has not shown it is entitled to relief.

### *Conclusion*

The Court concludes that CBX's complaint fails to allege sufficient facts to establish subject-matter jurisdiction. In the alternative, the complaint fails to state a claim upon which relief may be granted. A separate order will issue.


Dated: <u>     March 18, 2011     </u>          <u>     /s/                              </u>
                                                James K. Bredar
                                                United States District Judge