# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
|  | * |  |
| **CBX TECHNOLOGIES, INC.,** | * |  |
| **Plaintiff** | * |  |
| **v.** | * | **CIVIL NO.  JKB-10-2112** |
| **GCC TECHNOLOGIES, LLC,** | * |  |
| **Defendant** | * |  |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## MEMORANDUM

Pending before the Court are Defendant's motion to dismiss or, in the alternative, motion for summary judgment (ECF Nos. 39 & 40), Plaintiff's cross-motion for partial summary judgment (ECF No. 43), and Plaintiff's motion for reconsideration (ECF No. 41) of the Court's order denying Plaintiff's motion for leave to amend the complaint (ECF No. 38).  The motions have been briefed (ECF Nos. 42, 43, 44, 45), and no hearing is necessary, Local Rule 105.6.  Defendant's motion will be granted and Plaintiff's motions will be denied.

## I.  Procedural History

This case was filed by CBX Technologies, Inc., on August 2, 2010, against "GCC Technologies, LLC, *formerly known as*, Government Contract [*sic*] Consultants, LP."  (Compl., ECF No. 1.)  On November 15, 2010, then-presiding Judge Quarles entered a scheduling order that noted the deadline of November 22, 2010, for requests for modification of the initial scheduling order and further stated, "Thereafter, **the schedule will not be changed except for good cause.**"  (ECF No. 6.)[1]  Included in the scheduling order was a deadline of December 30, 2010, for moving for amendment of pleadings.  No such motions were filed by the deadline.

---

[1] This case was reassigned to the undersigned on January 12, 2011.

GCC's motion to dismiss, filed February 21, 2011 (ECF No. 11), was granted on March 18, 2011 (ECF No. 16).   CBX's appeal to the Fourth Circuit was thereafter docketed, and that Court vacated and remanded the March 18 judgment for further proceedings.  *CBX Technologies, Inc. v. GCC Technologies, LLC*, No. 11-1380, 2011 WL 6160227 (4th Cir. Dec. 13, 2011).

On February 8, 2012, this Court entered a revised scheduling order stating the following:

> In the Fourth Circuit's opinion accompanying its order remanding this case to this Court for further proceedings, it was stated:
>
>> The dispositive factual issues – issues that were not properly resolved on the face of the pleadings – are (1) whether work began before the November 9, 2009 retroactive effective date of the Subcontract Agreement, and if so, (2) whether a breach occurred before November 9, 2009.
>
> *CBX Techs., Inc. v. GCC Techs., LLC*, No. 11-1380, slip op. at 8 (4th Cir. Dec. 13, 2011) (per curiam) (unpublished). The parties have requested a discovery period of 60 days. Accordingly, the following schedule is applicable to this case:
>
> | | |
> |---|---|
> | April 9, 2012 | Discovery deadline; joint submission of status report |
> | April 16, 2012 | Requests for admission |
> | May 9, 2012 | Dispositive pretrial motions deadline |
>
> **This schedule will not be changed except for good cause.** All requirements of the original scheduling order (ECF No. 6) that are pertinent to this portion of the case remain in effect.

(ECF No. 24.)

On April 30, 2012, CBX filed a motion for leave to file an amended complaint (ECF No. 27), which was opposed (ECF No. 32), supplemented with exhibits to a reply (ECF Nos. 33, 34, and 35), and denied on July 25, 2012 (ECF No. 38).  The deadline for dispositive motions was twice extended without opposition.  (ECF Nos. 29 & 37.)

## II.  CBX's Motion for Reconsideration

CBX has requested the Court to reconsider its order denying Plaintiff's motion for leave to amend the complaint.  In the earlier order, this Court denied the motion because CBX failed to

show good cause for changing the deadline for moving for amendment of pleadings. Although CBX acknowledges that the Court followed Fourth Circuit precedent in its ruling, it is now asking this Court to rule anyway on CBX's Federal Rule of Civil Procedure 15 argument in the event the Fourth Circuit finds this Court erred in its Rule 16 analysis. This Court adhered to the Fourth Circuit's caselaw on motions for leave to amend in the earlier ruling and is unpersuaded that ruling should be reversed. CBX's arguments have been considered and its motion to reconsider will be denied.

### III. GCC's Motion for Summary Judgment

#### A. Standard for Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). The burden is on the moving party to demonstrate the absence of any genuine dispute of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must, by affidavit or other evidentiary showing, set out specific facts showing a genuine dispute for trial, Fed. R. Civ. P. 56(c)(1). Supporting and opposing affidavits are to be made on personal

knowledge, contain such facts as would be admissible in evidence, and show affirmatively the competence of the affiant to testify to the matters stated in the affidavit.  Rule 56(c)(4).

**B.    *Analysis***

Briefly recounted, CBX's complaint asserted one count for breach of a teaming agreement between it and GCC.  The teaming agreement allowed for GCC to be considered the primary contractor and CBX to be the subcontractor on a government contract involving the U.S. Department of Education's Federal Student Aid ("FSA") program.  (Compl. ¶ 6.)  CBX alleged that the teaming agreement directed that GCC would provide 51 percent of the full-time employees for the FSA program and receive 51 percent of the contract's value, while CBX would provide 49 percent of the full-time employees assigned to the contract and receive 49 percent of the value.  (*Id.*)  In late September 2009, GCC was awarded the FSA contract, which had a value of $2,401,494.40.  (*Id.* ¶ 7.)

In its complaint, CBX alleged it had five employees in place on or about October 1, 2009, to begin work.  (*Id.* ¶ 8.)  It also alleged that GCC's president, Jim Bailey, began to interfere "almost immediately" with CBX's employees, and that, as a result, all but one of the five CBX employees assigned to work on the FSA contract left CBX by early 2010.  (*Id.* ¶ 10.)  Additionally, CBX alleged that GCC and CBX entered into a written subcontract agreement that was signed on June 6, 2010, and that had an effective date of November 9, 2009.  (*Id.* ¶ 9.)

Attached to GCC's original motion to dismiss (ECF Nos. 11 & 12) were copies of the teaming agreement and the subcontract agreement.  (*Id.* Attachments 2 & 3.)  CBX did not dispute their authenticity in its response in opposition, and the Court accordingly relied upon them in its subsequent ruling, as did the Fourth Circuit.  This Court concluded that the teaming agreement automatically expired on November 9, 2009, based upon a termination clause in the teaming agreement in conjunction with a provision of the subcontract to the effect that it

4

superseded the teaming agreement.  That portion of this Court's prior ruling was not vacated by the Fourth Circuit.

However, the Fourth Circuit vacated the portion of this Court's prior judgment for GCC that concluded CBX's complaint failed properly to allege a material breach of the teaming agreement.  The appeals court noted that the complaint had alleged CBX had five employees in place on or about October 1, 2009, and reasoned that a breach of the teaming agreement could have occurred between that date and November 9, 2009.  In its order remanding the case, the Court stated that two dispositive factual issues were present that could not be resolved on the pleadings:  "(1) whether work began before the November 9, 2009 retroactive effective date of the Subcontract Agreement, and if so, (2) whether a breach occurred before November 9, 2009."

The appeals court also noted that these dispositive factual issues governed both the Rule 12(b)(1) inquiry into subject-matter jurisdiction and the merits of the case.  Thus, dismissal was not proper either under Rule 12(b)(1) or under Rule 12(b)(6).

The parties have now had a full opportunity to engage in discovery, and GCC has renewed its motion for dismissal for lack of subject-matter jurisdiction and moved, in the alternative, for summary judgment.  Because of the intertwined nature of the jurisdictional inquiry and the determination of the merits, the Court will address, first, the motion for summary judgment.

GCC has provided solid factual evidence to support its motion for summary judgment, and CBX has failed to present any evidence that refutes GCC's evidence.  The key points of GCC's evidence are the following:

1. Five CBX employees began working on the FSA contract between October 26 and November 2, 2009.  (Bailey Aff. ¶ 9, Attach. 2, email 10/23/2009.)

2. CBX first had five employees in place in November 2009.  (D'Andrade Dep. 127:3-4, Apr. 4, 2012.)

3.  GCC did nothing during October 2009 to interfere with CBX's ability to hire employees for performance of work under the subcontract.  (*Id.* 141:2-12.)

4.  GCC did nothing prior to November 9, 2009, to preclude CBX from performing work for GCC under the teaming agreement.  (*Id.* 142:4-12.)

5.  Through December of 2009, CBX's president, Chris D'Andrade, thought the relationship with GCC was going well.  (D'Andrade Dep. 179:19-22, Apr. 5, 2012.)

6.  The relationship between CBX and GCC stopped going well when D'Andrade "couldn't replace the people [he] needed to replace," around January 2010.  (*Id.* 180:1-5.)

7.  D'Andrade attempted to change his testimony about GCC not precluding CBX from performing under the teaming agreement by saying, "I guess I misspoke, because it first started from day one. So he was responsible for some form [*sic*]."  (*Id.* 259:6-17.)

8.  The original CBX employees began to leave in December 2009 or January 2010.  (*Id.* 267:19-22.)

Thus, the evidence establishes that CBX employees began work on the FSA contract before November 9, 2009, answering the first dispositive factual question posed by the Fourth Circuit in the affirmative.  The evidence produced by GCC also shows, other than D'Andrade's bare conclusion that Bailey "started from day one" to do something unspecified to preclude CBX from performing under the teaming agreement, that GCC and CBX enjoyed a good relationship through December 2009—well after the November 9, 2009, end of the teaming agreement. CBX's opposition to GCC's motion includes a striking admission:

> The second issue, namely, "(2) whether a breach occurred before November 9, 2009," is admittedly much thornier due to a lack of evidence beyond the attestations of Bailey and D'Andrade.

(Pl.'s Opp. 14, ECF No. 43.)

To overcome this deficit, CBX relies upon two emails authored by Bailey.  The first is dated November 3, 2009, and was sent to D'Andrade.  It said:

> Chris
> I have blocked one hour (10:00-11:00) in the conference room on Friday, 6 Nov 09, to meet with you and your staff.
>
> Please let me know if this is OK.

(*Id.* Ex. J.)  CBX asks this Court to draw from this email the inference that Bailey had quickly moved to become directly involved with CBX's employees and, therefore, had breached the teaming agreement, which provided that "the employees of one shall not be the employees of the other."  The inference CBX seeks to draw is unwarranted and unreasonable.

The second email is dated Monday, November 16, 2009—clearly, after the relevant date of the Court's inquiry—and was sent to the CBX and GCC employees working on the FSA contract.  It said the following:

> Good Morning Everyone
>
> Before I departed work on Friday, I had a long conversation with our COR, Mark Anderson. Mark relayed to me some issues that the Contracting Officer had passed on to him. These issues emanated from one or more complaints from one or more Government representatives. They are presented below:
>
> 1. Some members of our staff are still using the internet for non-contract related purposes.
> 2. Members of our staff are consuming breakfast at their desks, and the Government is paying for the time used for that purpose.
> 3. Staff members are spending too much time away from their desks and in groups talking for extended periods.
>
> All of these practices can place our contract in jeopardy. Therefore, I am reiterating, or, instituting the following policy effective immediately.
>
> 1. If you are caught "surfing" the net for other than market research purposes, your employment on this contract will be terminated immediately.
> 2. Consuming breakfast at your desk is no longer permitted. This certainly does not prohibit you from having breakfast at the café downstairs, or elsewhere, before you arrive at your work place.
> 3. You are expected to be at your work space, unless it is necessary for you to leave it to confer with a Government representative, or other GCC contract staff member on a matter directly related to your work.  Visits to the restroom are certainly not restricted.
>
> I need your support and cooperation in these areas so that our tenure at the Department of Education will be a long one.
>
> Thanks
>
> Jim

(*Id.* Ex. K.)  Even if this email related to the relevant time period, it does not provide evidence of "interference" with the FSA contract.  Notably, the only threat of adverse action is termination of employment "on this contract."   Whether an employee would remain employed by CBX is a different matter.  Neither of Bailey's email messages supports a conclusion that GCC breached the teaming agreement.

## IV.  CBX's Cross-Motion for Partial Summary Judgment

CBX asserts it is entitled to partial summary judgment on the theory that the subcontract was null and void, thus leaving the teaming agreement in place as the only agreement governing the parties until termination of the relationship in July 2010.  It offers alternative reasons as to why the subcontract was of no effect:

1.  Because Government Contracts Consultants, LP, became GCC Technologies, LLC, on April 20, 2010, the former partnership entity lacked capacity to enter into contracts and could not, therefore, have validly executed the subcontract in June 2010.

2.  GCC never ratified or novated the subcontract.

3.  GCC was, as the successor in a merger to Government Contracts Consultants, LP, bound by the teaming agreement.

(Pl.'s Cross-Mot. Summ. J. 1, ECF No. 43.)

GCC has responded that, under Maryland law, Government Contracts Consultants, LP, and GCC Technologies, LLC, are the same entity.  Under relevant statutes, a partnership may convert to a limited liability company by filing articles of organization that meet requirements set forth in the Maryland Code.  Md. Code Ann., Corps. & Ass'ns § 4A-211 (LexisNexis Supp. 2012).  And a related statute specifically provides:

(a) *Same entity.* – A general or limited partnership that has been converted to a limited liability company pursuant to § 4A-211 of this subtitle shall be deemed for all purposes the same entity that existed before the conversion.

(b) . . .

       (2)   All obligations and liabilities of the converting general or limited partnership or the converting proprietorship remain vested in the converted entity.

Md. Code Ann., Corps. & Ass'ns § 4A-213.  Notably, a different part of the Maryland Code addresses mergers.  *See* § 4A-701 *et seq.*

GCC has provided documentary evidence to support its assertion that the limited partnership was converted in accordance with Maryland law to a limited liability company. (Def.'s Mot. Summ. J., Ex. A, Bailey Aff. ¶ 3; *see also* Def.'s Opp. to Pl.'s Mot. Amend, Ex. B.) As well, CBX has supplied a copy of GCC's articles of organization filed to convert the partnership to a limited liability company.  (Pl.'s Opp. Ex. G, p. 8.)  CBX's entire argument regarding merger rests on something printed out from the Maryland State Department of Assessments and Taxation ("SDAT") that has the word "merged" after "status" for Government Contracts Consultants, LP.  (*Id.* p. 9.)  Given the actual articles of organization and their clear statement that they "are for the purpose of converting a limited partnership to a limited liability company," as well as other documents produced by SDAT, this one piece of paper is unpersuasive evidence that GCC is not the product of a conversion.

Because GCC was the same entity before and after the conversion, provisions in the subcontract pertaining to assignment to another party are inapplicable.  CBX fails to explain how GCC could have assigned something to itself.  Beyond that, it was logical to have had the subcontract executed in the name of the partnership rather than the LLC since the effective date of the subcontract, November 9, 2009, was well before the partnership converted to a limited liability company.  It is not difficult to imagine that, had GCC executed the contract in the name of the LLC, CBX might well be complaining that GCC had no authority to execute a contract in its post-conversion name when the contract had an effective date prior to the conversion.  The Court concludes the subcontract was valid and, accordingly, terminated the teaming agreement

on November 9, 2009.  CBX has failed to show that it is entitled to partial summary judgment and its motion will be denied.

### V.  GCC's Motion to Dismiss for Lack of Subject-matter Jurisdiction

GCC presents persuasive evidence that CBX filed this complaint in the absence of subject-matter jurisdiction.  GCC's argument is based upon the worst-case scenario in the event GCC was found to have breached the teaming agreement before November 9, 2009.  Thus, computing the greatest possible damages from late-October 2009 to November 9, 2009, the quantum of recoverable damages is still less than the $75,000 amount required for diversity jurisdiction.  Given, however, the necessity to decide the merits based upon the relationship of the subcontract to the teaming agreement, the Court holds that, *as filed*, subject-matter jurisdiction existed because the complaint was premised upon a much longer term for the teaming agreement.  In retrospect, the teaming agreement had only a very short term.  But that issue was best left to resolution on the merits.  Accordingly, GCC's motion, treated alternatively as a motion to dismiss for lack of subject-matter jurisdiction, will be denied.

### VI.  Conclusion

A separate order will issue reflecting the rulings in this memorandum and directing the Clerk to close the case.

DATED this  3rd_  day of December, 2012.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge